IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Heather Watts,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )     CASE NO. 2:06CV1149-MEF
                                  )
Hospitality Ventures, LLC,        )
                                  )
        Defendant.                )

**SUPPLEMENTAL REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES Hospitality Ventures, LLC and, pursuant to Federal Rule of Civil Procedure 56(b) and the Court's April 2, 2007, Order, files this Supplemental Reply in Support of its Motion for Partial Summary Judgment.

## I.   INTRODUCTION[1]

Plaintiff does not dispute that only an "eligible employee" can maintain a claim under the Family and Medical Leave Act ("FMLA"). Plaintiff does not dispute that she does not meet the FMLA's statutory requirements to be an "eligible employee". Instead, Plaintiff's only assertion is that she should be allowed to maintain an FMLA claim because Hospitality Ventures allegedly failed to promptly notify her of her ineligibility for FMLA leave

---

[1] In her Responses, Plaintiff argues that Hospitality Ventures is an "employer" under the FMLA, and the proper defendant in this action. (Resp. at 1-4, 6; Supp. Resp. at 2, 6-7). Both arguments are premature because Hospitality Ventures has not yet moved for summary judgment on those issues.

1732762

and should be estopped from denying that she was an "eligible employee".

Failure to promptly notify an employee of ineligibility for FMLA leave does not render her eligible, and courts in the Eleventh Circuit have rejected the doctrine of estoppel in FMLA cases.[2] Summary judgment should be granted on Plaintiff's FMLA claim for these reasons alone. Pretermitting whether the Eleventh Circuit permits application of estoppel to FMLA claims, the doctrine cannot be applied here because: 1) Plaintiff's employer did not make any definite representation to her about her eligibility for FMLA leave, 2) Plaintiff did not rely on any representation from her employer, and 3) Plaintiff did not rely to her detriment. For all these reasons, the Court should grant Hospitality Ventures' Motion for Partial Summary Judgment on Plaintiff's FMLA claim.

## II.  SUPPLEMENTAL STATEMENT OF FACTS

### A.  No Representation

Plaintiff admits that prior to her termination, her employer never made any representations to her about her eligibility for leave under the FMLA. (Pl. Dep. p. 267:18-20 (attached as Exhibit 1)). Plaintiff claims that _after_ her employment terminated and her leave concluded, Hotel General Manager Tammy Dominguez stated to

---

[2]Hospitality Ventures fully briefed both of these issues in its Reply in Support of Motion for Partial Summary Judgment. Pursuant to Federal Rule of Civil Procedure 10(c), Hospitality Ventures adopts by reference its Reply in Support of Motion for Partial Summary Judgment.

Plaintiff that Dominguez allegedly made a mistake and could not terminate Plaintiff because she was on FMLA leave.[3] (Supp. Resp. at 3; Pl. Dep. at 355:17-356:14). Plaintiff also asserts in her brief that her employer assured her that "she would have her former position with Defendant when she returned from leave," but cites no deposition testimony, affidavit, or other evidence to support this allegation. (Supp. Resp. at 8).

**B.    No Detrimental Reliance**

Plaintiff admits she did not rely to her detriment on her employer's conduct regarding her taking maternity leave. (Pl. Dep. p. 155:10-156:13). Specifically, Plaintiff testified:

> Q.    Well, did you do anything that you otherwise would not have done based upon your communications with the company about you taking maternity leave?
>
> A.    No.

(Id. at 156:9-13). Plaintiff also testified that if her employer notified her that it would not allow her to take maternity leave, she still would have given birth to her baby. (Id. at 155:10-156:13).

Plaintiff alleges that she continued working during her maternity leave in reliance upon her employer's assurance that she could return to her former position. (Am. Resp. at 8). Plaintiff cites no evidence to support this allegation, however, and it is

---

[3] This statement was erroneous because, as Hospitality Ventures explained in its Brief in Support of its Motion for Partial Summary Judgment, Plaintiff was not an "eligible employee" under the FMLA.

contrary to her testimony.  Plaintiff admits her employer offered to have someone else perform all of her duties during her maternity leave.  (Pl. Dep. at 276:20-278:1).  Plaintiff voluntarily chose to continue working seven hours per week during her leave.  (Id. at 90:3-93:2, 276:20-278:1).  The Hotel paid Plaintiff for performing this work.  (Id. at 89:11-90:9).

### III. ARGUMENT AND CITATION OF AUTHORITY

**A.   No Misrepresentation; No Detrimental Reliance**

Assuming, arguendo, that the doctrine of estoppel could apply to FMLA claims in the Eleventh Circuit, Plaintiff would still fail to establish the essential elements necessary for estoppel to apply.  (Supp. Resp. at 4-6).  A party may be estopped from pursuing a defense only where: 1) it "makes a definite misrepresentation of fact to another person having reason to believe that the other person will rely upon it", 2) the other person acts in reliance upon the misrepresentation, and 3) the person relies to her detriment.  Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 59 (1984) (establishing the elements of estoppel under federal common law, but not deciding whether estoppel can pertain to an FMLA claim because the FMLA was enacted nine (9) years later); Kanzanzas v. Walt Disney World Co., 704 F.2d 1527, 1532-33 n.6 (11th Cir. 1983)(elements of estoppel only).  Absent evidence of detrimental reliance, an employer cannot be estopped from asserting that an

4

employee was not an "eligible employee" under the FMLA.  <u>Brungart</u>
<u>v. BellSouth Telecomms., Inc.</u>, 231 F.3d 791, 797 n.4 (11th Cir.
2000).

Here, Plaintiff does not meet any of the elements of estoppel.
Prior to termination of Plaintiff's employment, her employer never
made any representation to her about her eligibility for FMLA
leave. (Pl. Dep. p. 267:18-20). Although Plaintiff asserts --
without any evidentiary support -- that her employer assured her
that "she would have her former position with Defendant when she
returned from leave," this does not definitely represent that she
was eligible for leave under the FMLA. (Supp. Resp. at 8). In
addition, Plaintiff admits that she did not rely to her detriment
on her employer's conduct regarding her taking maternity leave.
(Pl. Dep. p. 155:10-156:13). Specifically, Plaintiff testified:

> Q.   Well, did you do anything that you otherwise would
>      not have done based upon your communications with
>      the company about you taking maternity leave?
>
> A.   No.

(<u>Id.</u> at 156:9-13). Dominguez did not tell Plaintiff that she was
on FMLA leave until <u>after</u> the Hotel terminated Plaintiff's
employment, so Plaintiff could not have acted in reliance upon that
statement. (<u>Id.</u> at 355:17-356:14). Plaintiff also voluntarily
chose to continue working during her leave, rather than accept her
employer's offer to have someone else perform all of her duties,
and the Hotel paid Plaintiff for all the work she performed during

1732762

her leave.  (Id. at 89:11-93:2, 276:20-278:1).  Thus, estoppel
could not apply here because Plaintiff's employer did not make any
definite misrepresentation to her, and Plaintiff did not rely to
her detriment upon any definite misrepresentation from her
employer.  Heckler, 467 U.S. at 59; Brungart, 231 F.3d at 797 n.4;
Kanzanzas, 704 F.2d at 1532-33 n.6; Sanchez, 626 F.2d at 1231.

**B.   Plaintiff's Cases Inapposite**

     The cases Plaintiff cites do not warrant application of
estoppel.  In several of the cases Plaintiff cites, the employee
relied to his or her detriment on the employer's definite
representations that they were eligible for FMLA leave.  Minard v.
ITC Deltacom Communications, Inc., 447 F.3d 352, 354, 358-59 (5th
Cir. 2006) (employer told the employee she was eligible for FMLA
leave, and the plaintiff scheduled her surgery and took leave in
reliance upon that representation); Duty v. Norton-Alcoa Proppants,
293 F.3d 481, 493-94 (8th Cir. 2002) (employee took leave in
reliance on employer's written correspondence mistakenly approving
him for FMLA leave); Kosakow v. New Rochelle Radiology Associates,
P.C., 274 F.3d 706, 722-27 (2d Cir. 2001)(employee scheduled and
had surgery based upon employer's representation that she could
take FMLA leave for surgery).  The remaining cases Plaintiff cites
refused to apply estoppel to FMLA claims.[4]  Brungart, 231 F.3d at

_____

     [4] Plaintiff also cites to Arbaugh v. Y & H Corp., 546 U.S. 500
(2006), for the proposition that her status as an "eligible

1732762

797 n.4 (refusing to apply estoppel because there was no detrimental reliance); <u>Woodford v. Cmty. Action of Greene County, Inc.</u>, 268 F.3d 51 (2d Cir. 2001) (holding that the employee was not an "eligible employee" under the FMLA, and refusing to consider whether estoppel applied because the employee did not raise the issue); <u>Dormeyer v. Comerica Bank-Illinois</u>, 223 F.3d 579, 582 (7th Cir. 2000)(refusing to apply estoppel because there was no detrimental reliance); <u>Pennant v. Convergys Corp.</u>, 368 F. Supp. 2d 1307, 1313 (S.D. Fla. 2005)(refusing to apply estoppel to FMLA claims until Eleventh Circuit instructs otherwise). Accordingly, the Court should refuse to apply estoppel here, and grant Hospitality Ventures' Motion for Partial Summary Judgment on Plaintiff's FMLA claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Hospitality Ventures' Motion for Partial Summary Judgment on Plaintiff's Family and Medical Leave Act claim.

---

employee" is an element of her FMLA claim, and not a jurisdictional limitation. (Am. Resp. at 4-5). This argument is irrelevant because Hospitality Ventures has not argued this Court lacks jurisdiction over Plaintiff's FMLA claim.

1732762

This 30th day of August, 2007.

                             Respectfully submitted,

                             Jeffrey A. Lee
                             Maynard, Cooper & Gale, P.C.
                             1901 Sixth Avenue North
                             2400 AmSouth/Harbert Plaza
                             Birmingham, Alabama 35203-2618
                             Telephone: (205) 254-1987
                             Fax: (205) 254-1999

                             s/ Daniel S. Fellner_____
                             R. Jason D'Cruz
                             Admitted Pro Hac Vice
                             Daniel S. Fellner
                             Admitted Pro Hac Vice
                             Morris, Manning & Martin, LLP
                             1600 Atlanta Financial Center
                             3343 Peachtree Road, N.E.
                             Atlanta, Georgia 30326-1044
                             Telephone: (404) 233-7000
                             Fax: (404) 365-9532

                             Attorneys for Hospitality Ventures,
                             LLC

1732762

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

HEATHER WATTS,                          )
                                        )
            Plaintiff,                  )
                                        )
    vs.                                 ) Case No.: 2:06CV1149-MEF
                                        )
HOSPITALITY VENTURES, LLC,              )
                                        )
            Defendant.                  )
                                        )

## CERTIFICATE OF SERVICE

I certify that this day I electronically filed the foregoing SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will notify the following of such filing:

> Priscilla Black Duncan
> P.B. Duncan & Associates
> 472 S. Lawrence, Suite 204
> Montgomery, AL  36104
> helzphar@mindspring.com
>
> Alicia K. Haynes
> Haynes & Haynes, P.C.
> 1600 Woodmere Drive
> Birmingham, Alabama 35226
> akhaynes@haynes-haynes.com

This 30th day of August, 2007.


                        s/ Daniel S. Fellner
                        Attorney for Hospitality Ventures, LLC


1732762

1

ORIGINAL

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE MIDDLE DISTRICT OF ALABAMA

3                      NORTHERN DIVISION

4

5       HEATHER WATTS,

6              Plaintiff,

7       vs.                      CASE NO. 2:06CV1149-MEF

8       HOSPITALITY VENTURES, LLC,

9              Defendant.

10

11

12

13              *  *  *  *  *  *  *  *  *  *  *

14              DEPOSITION OF HEATHER GODFREY WATTS,

15      taken pursuant to stipulation and agreement

16      before Heather Barnett, Court Reporter and

17      Commissioner for the State of Alabama at Large,

18      in the Law Offices of Maynard, Cooper & Gale,

19      100 North Union Street, Suite 650 RSA Tower,

20      Montgomery, Alabama, commencing at approximately

21      10:32 a.m., on Thursday, July 19, 2007, and

22      continuing on Friday, July 20, 2007.

23              *  *  *  *  *  *  *  *  *  *  *

1      Inn?

2   A.   No.

3   Q.   Okay.  You mentioned that you received a pay

4        raise of about $3,000 a year --

5   A.   Uh-huh.

6   Q.   -- sometime during your employment, but you

7        don't remember when.  Did your pay ever

8        change again?

9   A.   No.  There's an e-mail that has that date of

10       change, the increase.

11  Q.   Okay.  Was there ever a period of time where

12       you were paid for only one-day-a-week's worth

13       of services?

14  A.   Can you repeat that question?

15  Q.   Sure.  Was there ever a period of time during

16       your employment at the Fairfield Inn that you

17       were paid for performing only one day's worth

18       of services per week?

19  A.   I don't know if you would list it as a day,

20       but maybe hours.  Yes.

21  Q.   Okay.  So there was a period of time where

22       you were paid for performing one -- what was

23       that?  What were you paid?

| | | |
|---|---|---|
| 1 | A. | Seven hours a week.  Is that what you're |
| 2 | | referring to? |
| 3 | Q. | Yes. |
| 4 | A. | Okay. |
| 5 | Q. | When was that? |
| 6 | A. | During my maternity leave. |
| 7 | Q. | So your pay changed again when you went on |
| 8 | | maternity leave? |
| 9 | A. | Correct. |
| 10 | Q. | To get paid seven hours per week? |
| 11 | A. | Yes.  That was at their request. |
| 12 | Q. | Were you working full-time for the property |
| 13 | | at that time when you were on maternity |
| 14 | | leave? |
| 15 | A. | Was I working for them? |
| 16 | Q. | Yeah. |
| 17 | A. | What do you mean? |
| 18 | Q. | Well, you were getting paid for seven hours a |
| 19 | | week.  Were you working 35 hours a week? |
| 20 | A. | No.  I was working seven hours or more.  I |
| 21 | | mean, I would get -- I mean, I always gave |
| 22 | | more of my time, even being at home, yes. |
| 23 | Q. | And your pay changed because you went on |

| 1 | | leave? |
|---|---|---|
| 2 | A. | Correct. |
| 3 | Q. | Whose idea was it for you to continue working |
| 4 | | one day per week while you were on that |
| 5 | | leave? |
| 6 | A. | Roger. |
| 7 | Q. | Did you want to continue working? |
| 8 | A. | Yes.  Can I explain why? |
| 9 | Q. | Sure. |
| 10 | A. | Realizing coming -- coming into the property, |
| 11 | | I was told that they didn't meet some budgets |
| 12 | | and that, you know, things were -- I don't |
| 13 | | want to say very bad but they were not |
| 14 | | meeting some revenue goals, or bottom line is |
| 15 | | what they call it.  So through my sales |
| 16 | | efforts and the revenue that I had brought |
| 17 | | in, I felt that I had built that hotel up.  I |
| 18 | | had built the clientele, the groups, the |
| 19 | | military.  I had documented an amount of |
| 20 | | booked business during my maternity leave. |
| 21 | | And so I felt that during my maternity |
| 22 | | leave and working with my intern was very |
| 23 | | important to me.  It was important that I |

```
 1        keep the hotel where it was or better.

 2        Because I worked very hard, sometimes even

 3        more than that 35 hours a week, to get that

 4        hotel where it was as far as revenue-wise.

 5   Q.   Okay.  Any other reasons that you wanted to

 6        continue working that seven hours or more per

 7        week during your maternity leave?

 8   A.   Just to keep my hands on it, you know, just

 9        to -- I was working with an intern.  Even

10        though she was just doing military business,

11        Roger agreed with me that we didn't feel that

12        she would be, like, stealing any business;

13        but it just felt a comfort of knowing that I

14        was working directly with her and Roger.  And

15        the her I'm referring to is Tandi that was

16        the intern that we hired during maternity

17        leave.

18   Q.   Tandi Mitchell?

19   A.   Correct.  So it was very important to me.  I

20        loved my job.  I enjoyed what I did, and I

21        felt like I did a very good job at it.  So

22        keeping it where it was during that maternity

23        leave was important to me and important that
```

1    I came back and had that booked business

2    still there.

3    Q.   During your maternity leave, did you ever

4    work more than one day per week?

5    A.   Yes.

6    Q.   When?

7    A.   As needed.  I mean, I --

8    Q.   And maybe I didn't ask that question

9    properly.  Let me try it again.

10   A.   Sure.

11   Q.   During your maternity leave, did you ever

12   work more than seven hours per week?

13   A.   Yes.

14   Q.   Okay.  When?

15   A.   As much as I could.  As much as I was needed

16   to.  It was based on the needs of the hotel.

17   If Roger was to call or Tandi was to call or,

18   you know, any kind of e-mail that came across

19   or question on a group.  So some weeks it was

20   just seven and one week it may have been two;

21   but, you know, it was consistently seven

22   hours or more a week.

23   Q.   Did Tandi ever go on vacation while you were

1    A.    I was just saying that the e-mails show

2          Roger's communication with me about, you

3          know, it's our goal to get you back; we want

4          you to take six to eight weeks, enjoy your

5          family.  You know, it was -- so it was my

6          understanding in the e-mails and my letter

7          that that was a form of contract for my

8          employment.  I felt that I had that security

9          there.

10   Q.    What would you have done if Fairfield Inn had

11         said that you can't take leave?

12   A.    That I couldn't take leave to have a baby?

13   Q.    Yeah.

14   A.    Then I wouldn't have had a choice.

15   Q.    What do you mean you wouldn't have had a

16         choice?

17   A.    I mean, I would have had the baby.  I mean,

18         you know, you -- you know, I would have --

19         you know, if they would have told me, I would

20         have -- I don't know.

21              MS. DUNCAN:  Object.  It calls for

22                   speculation not relevant to the

23                   facts.

1    Q.   Did you do anything different that you

2         otherwise would not have done based upon

3         your -- based upon this letter that you gave

4         to Todd?

5    A.   Would I have done it differently?

6    Q.   No.  Did you do anything different?

7    A.   No.  If you can explain different.  What do

8         you mean?

9    Q.   Well, did you do anything that you otherwise

10        would not have done based upon your

11        communications with the company about you

12        taking maternity leave?

13   A.   No.

14   Q.   All right.  Let's back up.  We talked

15        previously about a claim for sex

16        discrimination.  And I just wanted to get an

17        idea from you.  Are there any non-pregnant

18        employees that you believe were treated more

19        favorably than you?

20   A.   In what terms are you speaking?

21   Q.   Any terms.

22   A.   No.

23   Q.   Okay.  Are there any male employees you

1   A.  Please accept this letter as my official

2       notice of request for maternity leave.  I am

3       planning on taking six to eight weeks

4       depending on my delivery and health of my

5       child.  I will give you official notice of my

6       return after my six-week postpartum

7       appointment.  I will not be out more than my

8       allotted time of 12 weeks under the FMLA.

9   Q.  Okay.

10  A.  Keep reading?

11  Q.  No.  That's good enough.  Does this

12      Defendant's Exhibit #24 give any response by

13      the company about your entitlement or

14      eligibility for leave under the FMLA?

15  A.  No.  They never contested it either.

16  Q.  Okay.

17  A.  They never --

18  Q.  Did anybody ever respond to you about your

19      eligibility for leave under the FMLA?

20  A.  No.  No.  No.

21  Q.  Handing you what's been marked as Defendant's

22      Exhibit #25.  Could you please take a look at

23      it and let me know when you're ready to

1   A.   Yes.

2   Q.   So this one was sent to Tammy?

3   A.   Yes.

4   Q.   So you sent this e-mail to Tammy?

5   A.   Uh-huh.

6   Q.   Do you see in the third full paragraph,

7        Please let me know how things are going with

8        Tandi.  She has lots of responsibility while

9        I am gone, and I want to make sure that she

10       is doing what is expected.

11  A.   Uh-huh.

12  Q.   Why did you want to make sure that she was

13       doing what was expected?

14  A.   Because that was my expectation that was

15       given by Roger.  She had a job description,

16       and she communicated to -- to Tammy, too.

17       And I was just trying -- actually, I was

18       trying to combine the circle of us all three

19       communicating.

20  Q.   Okay.  You see in the fourth full paragraph,

21       it says, I know I am on maternity leave, but

22       I am willing to do what needs to be done.

23  A.   Yes.

```
 1      Q.   I have worked so hard over the years for our

 2           business and I don't want to fail.

 3      A.   Uh-huh.

 4      Q.   I truly believe in our property.

 5      A.   Correct.

 6      Q.   Why did you write that?

 7      A.   I was letting her know that even though I was

 8           away, that I was dedicated to do my job.  I

 9           mean, I physically could not be there.

10      Q.   Did you want to continue working during your

11           leave on this to try to help?

12      A.   Yeah.  Well, Roger gave me an option to

13           either let Tandi completely handle the

14           internship or to try to keep my hands in it,

15           meaning being able to put things in Sales Pro

16           or, you know, keeping, you know, the revenue

17           going.  So I opted -- when he said, well, we

18           can pay you the seven hours a week, but this

19           is what I expect of you is to make sure that

20           Tandi is keeping the hotel booked and

21           maintaining the business.

22      Q.   Okay.  And you chose the latter?

23      A.   I did.  I had worked so hard to get it where
```

1   it was, so I felt strongly about that.

2 Q. All right.  Handing you what's been marked as

3   Defendant's Exhibit #29.

4 A. Uh-huh.

5 Q. Take a moment to read that and let me know

6   when you're ready to answer some questions.

7 A. Okay.

8 Q. What is Defendant's Exhibit #29?

9 A. It is an e-mail that I sent to Roger on

10   August the 29th -- I'm sorry -- yes, August

11   the 29th, '05.

12 Q. 2005?

13 A. Yes.

14 Q. Does this e-mail talk about when you would be

15   released to return to work?

16 A. Let me refer again, please.

17 Q. Sure.

18 A. I didn't give any specific date.  I just told

19   him I had a follow-up appointment on

20   September 27th and, hopefully, all will go

21   well and I will be released to return to

22   work.

23 Q. It says, If all goes well, I will be back on

1          Hospitality Ventures in Atlanta, were you

2          not?

3     A.   Correct.

4     Q.   And who hired you?

5     A.   Roger Miller.

6     Q.   Okay.  Did Todd Epplin have anything to do

7          with your compensation?

8     A.   No.

9     Q.   Did he have anything to do with your sales

10         promotion or production?

11    A.   No.

12    Q.   Did anyone with Montgomery Ventures supervise

13         you in any way directly?

14    A.   No.

15              THE WITNESS:  These are in order, so

16                  put those under there.

17    Q.   Okay.  Now, after you were fired by

18         Ms. Dominguez on November 2nd, did she call

19         you back a few days later to try to get you

20         to --

21    A.   Actually, it was the next day.

22              MR. FELLNER:  Hold on.  Hold on.

23                  Object to the form of the

1                   question.  Now you can go ahead.

2          THE WITNESS:  I'm sorry.  I'll learn to

3              pause more.  I apologize.

4  A.  It was actually the next day.

5  Q.  The next day.  That was the --

6  A.  On the 3rd.

7  Q.  The 3rd.  Okay.  And what did she -- what did

8      she say to you?

9  A.  She, first of all, asked me if I had been --

10      or if I had called the hotel to ask about

11      FMLA, and I said no.  And she said she did

12      not realize that I was under FMLA and that

13      they had made a mistake and that they would

14      be offering me another job.

15  Q.  And you had already -- had you already turned

16      in your equipment at this time?

17  A.  Correct.  That morning I went to the hotel

18      about 11, 11:15, and met Carrie, who was the

19      only manager on duty at that time.  And

20      Carrie showed me where Tammy had left a

21      packet, which included a letter stating that

22      this was my final paycheck -- or, actually,

23      it was a bonus and a reimbursement check that