# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHEAST DIVISION

| | |
|---|---|
| **HEATHER WATTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CIVIL ACTION NO.: |
| | ) 2:06-cv-1149-MEF |
| **HOSPITALITY VENTURES, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## PLAINTIFF'S EVIDENTIARY SUBMISSION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff and submits the following as evidence in opposition to Defendant's Motion for Summary Judgment in the above-referenced matter:

1. Affidavit of Heather Watts;

2. Personnel Action Form for Jennifer Anne Middleton;

3. Personnel Action Form for Tandi Mitchell;

4. Essential Duties and Responsibilities and Summary of Director of Sales and Marketing Job.

Respectfully submitted,


/s/ Alicia K. Haynes
Alicia K. Haynes
Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daniel S. Fellner
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326

Jeffrey Allen Lee
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2618

R. Jason D'cruz
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326

/s/ Alicia K. Haynes
OF COUNSEL

## AFFIDAVIT OF HEATHER WATTS

STATE OF ALABAMA )
COUNTY OF MONTGOMERY )

Personally appeared affiant, HEATHER WATTS, who being duly sworn, says:

1. This affidavit is given on the basis of my personal knowledge pertaining to my termination from Hospitality Ventures, LLC during my FMLA leave and discrimination against me due to my pregnancy and motherhood.

2. I was hired by Hospitality Ventures, LLC, an Atlanta, Georgia, company on June 24, 2004, as director of sales and marketing at the Fairfield Inn by Marriott, 5601 Carmichael Road, Montgomery AL 36117. After an interview in Atlanta, Georgia, with Hospitality Ventures' Vice President Roger Miller, I was offered the position and hired. Roger Miller subsequently supervised my work, received my weekly reports and communicated with me on a weekly basis. Todd Epplin was the general manager of the hotel in Montgomery, and I coordinated sales events with him. Epplin did not set my hours nor direct my sales efforts. All my insurance and benefits were determined by Hospitality Ventures, LLC.

3. Because of the nature of my employment, I spent about ten hours per week on site at the hotel in Montgomery. Thirty percent of my time was doing inside sales and seventy percent of my time was doing outside sales. The remainder of my work hours were spent making sales calls, cold calls to potential customers, appointments, telemarketing on the telephone for sales, general outside contact sales, such as visiting clients and processing business information and electronic mail on a laptop computer.



1

4. I was an experienced sales person with several years if experience in the hotel industry and a BBA degree. My marketing efforts and expertise soon brought the property out of the red and made it profitable. As a result, Roger Miller, Vice President of Hospitality Ventures, granted me a raise in April 2005. I also attempted to negotiate other work hours during this time but was told I had to work 35 hours a week as I had originally agreed.

5. On June 6, 2005, I advised Epplin, by letter, for FMLA/maternity leave for the birth of my child and up to 12 weeks, as the Hospitality Ventures handbook provides. Epplin granted me that leave. The company had no human resources or personnel department but I also discussed my request for leave with Roger Miller. Epplin told me Miller agreed that I could take the 12 weeks of leave.

6. Epplin left the company in July or August 2005 and was replaced also in July or August 2005 by Tammy Dominguez, a divorced woman who had previously lost custody of her own children. Dominguez shared this information with me and it became obvious to me then that Hospitality Ventures did not employ any female managers with children. I continued to work with Roger Miller during this time and through most of my maternity leave.

7. Before I left on my maternity leave on August 11, 2005, I recruited and trained Tandi Mitchell, an experienced events booking agent, who took over my duties until I could return from FMLA leave on November 9, 2005. I was in contact with Tandi almost daily to assist her with her internship, answer questions, help keep sales going at the hotel, and I continued to send weekly Sales Reports to Roger Miller.

8. During my maternity leave, at Roger Miller's request, I continued to work for the hotel from my home and was paid for seven hours per week, although I worked many more hours. I would often go to the hotel to check on Mitchell's progress and I also wrote the hotel's sales plan and marketing plan while on FMLA leave for the upcoming year (2006). I delivered the sales and marketing plan to Tammy Dominguez on October 31, 2005. Two days later, on November 2, 2005, I was terminated by Dominguez.

9. Tammy Dominguez called me on November 2, 2005, a week before my FMLA leave was to expire and I was to return to work. My date to return was November 9, 2005. Dominguez asked me if I was returning to work full time. I said "yes." I referenced to Ms. Dominguez what my work hours were per my previous agreement with Roger Miller in that I worked 35-hours a week or 7 hours a day, 5 days a week. Dominguez replied that I would expected to work 40 hours a week, not 35 because she was now the general manager and was expecting me to work from 8:00-6:00 p.m. at the hotel. I informed Ms. Dominguez that I would have to find child care for the additional hours, as I had planned to return to my normal schedule of 35 hours, not 40. Ms. Dominguez told me that I would have to let her know by 5:00 p.m. that day if I could get child care after 6:00 p.m.

10. I tried to explain to Dominguez that I had a job agreement at the time I was hired with Hospitality Ventures for 35 hours a week but she cut me off and ended the telephone conversation. I also tried to explain to Ms. Dominguez that director of sales and marketing works outside the hotel, not in, because Ms. Dominguez was explaining to me that her sales managers would be in the hotel from 8:00 a.m.-6:00 p.m.

11. Within 15 minutes of that conversation, Ms. Dominguez called back and said that she and Roger Miller were not going to give me the option of coming back to work and I could either resign today or I would be terminated.

12. She fired me and ordered me to return my laptop and all company materials on November 3, when I received my last check.

13. I never told Ms. Dominguez I would not work 40 hours a week, I told her I was going to have to try and find child care for the additional hours since I had previously worked 35 hours a week.  My first child was in child care during my employment with Hospitality Ventures and the issue of child care never was a problem.

14. In October 2005, Ms. Dominguez started pressuring me to come back to work three days a week at the hotel and complete the remainder of my work at home.  The intern I recruited to work in my place while I was on maternity leave, Tandi Mitchell, was still employed and the company was not short handed.  Tandi Mitchell is a single person; is not married nor does she have children.  I worked with Tandi approximately 2 days sometimes at the hotel during the entire time I was on maternity leave.

15. Hospitality Ventures falsely told me that my health insurance had been canceled retroactively to October 31, 2005.  After calling BlueCross-Blue Shield, I was informed that my insurance had been paid through the month of November.

16. On November 6, 2005, after the company fired me, Tami Dominguez called me at home, wanting to put me back on the payroll, saying she did not know that I had been on FMLA.

4

17. On November 7, Tami Dominguez e-mailed me with an offer of a night audit job or a front desk job at the hotel, saying that if I did not respond by the next day, she would consider that I had resigned. I considered her offer an insult as these were night desk clerk jobs and I had a business degree with years of experience in hotel marketing and sales.

18. I was replaced by Tandi Mitchell, a single woman with no children, and she was later replaced by Jennifer Middleton, also a single woman with no children. Both Roger Miller and Tammy Dominguez expressed concern while I was on maternity leave that I would not be able to obtain adequate child care for my infant. In an attempt to deny me unemployment compensation after my termination. Tami Dominguez stated to the Department of Industrial Relations that I was unable to obtain adequate child care and the reasons I had voluntarily left the company. The company was subsequently overruled and I was granted full unemployment benefits.

Remainder of Page Left Intentionally Blank

_[signature]_
Affiant

STATE OF ALABAMA }
MONTGOMERY COUNTY }

Before me the undersigned, a Notary Public in and for said County and State, this day personally appeared affiant, who is known to me, and who being first duly sworn deposes and says that the matters and things alleged in the foregoing affidavit are true as therein averred.

_[signature]_
Affiant

Sworn and subscribed before me this 2nd day of October, 2007.

_[signature]_
Notary Public
My commission expires 2-8-09

jennifer0505@knology.net

# PERSONNEL ACTION FORM

Name __Middleton Jennifer Anne__
         Last            First            Middle

(As it appears on SS Card)

Effective Date of Action __1/9/06__   Property __Montgomery Ventures dba FFI__
                                      Job Title __DIRECTOR OF SALES__

Date Prepared __1/9/06__   Time Badge # _____
                           (Attach time clock printout if new hire)

Check Appropriate Boxes    ⊖ New Hire    ⊖ Change
                           ⊖ Rehire      ⊖ Other _____

| | |
|---|---|
| **Associate Information** (New or Changed) | Name __Jennifer A. Middleton__ Soc Sec No. __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__<br>Street Address __1125 Beth Manor Drive__<br>City, State, Zip __Montgomery, AL 36109__<br>Telephone No. __(334) 356-3755__  ⊖ Male ☒ Female  Date of Birth __5-5-73__<br>☒ Single ⊖ Married  Withholding Allowances: _____ Additional Withholding Per Check _____<br>EEO race code: ☒ White ⊖ Black ⊖ Hispanic ⊖ Asian/Pacific Islander ⊖ Am. Indian/Alaskan Native |
| **SOC SEC NO. VERIFICATION: INITIALS ___** | |
| **New Hire/ Rehire** | Job Title __DIRECTOR OF SALES__   Department No. _____<br>Hire Date __1/9/06__   or Return from Lay-off Date _____<br>Work Status: ● FT ⊖ PT ⊖ Temp ⊖ Seasonal FT ⊖ Seasonal PT<br>⊖ Hourly: Rate of Pay (per hour) _____   ● Salary: Annual Salary __$40,000__<br>Insurance Eligibility Date __4/9/06__   (hourly = 90 day wait / salaried = no wait) |
| **Changes**<br>⊖ Review Increase<br>⊖ Merit<br>⊖ Promotion<br>⊖ Adjustment<br>⊖ Transfer<br>⊖ Other | **FROM**                                      **TO**<br>Job Title _____                  Job Title _____<br>Dept Number _____               Dept Number _____<br>Rate of Pay _____ Per _____     Rate of Pay _____ Per _____<br>Work Status: ⊖ FT ⊖ Seasonal FT    Work Status: ⊖ FT ⊖ Seasonal FT<br>              ⊖ PT ⊖ Seasonal PT                  ⊖ PT ⊖ Seasonal PT<br>Next Review Date _____ |
| **Absence** | ⊖ Vacation Pay   No. of days requested _____ From: _____ To: _____<br>⊖ Sick Pay        No. of days requested _____ From: _____ To: _____<br>⊖ Other           No. of days requested _____ From: _____ To: _____<br>⊖ Leave of absence (FMLA) From: _____ To: _____ Reason: _____ |
| **Remarks** | **EXHIBIT 2**                                       CONFIDENTIAL |

**APPROVALS**
Department Head/Date __JP Dominguez 1/6/09__   General Manager/Date _____
Entered into payroll by _____                Date _____

MV 00199

Name __Mitchell  Tandi  D.___
(As it appears on SS Card)   Last           First        Middle

Property __Fairfield Inn__
Effective Date of Action ~~5/15/04~~   Job Title __Sales Manager__
Date Prepared __5/12/06__   Time Badge # _____
(Attach time clock printout if new hire)

**Check Appropriate Boxes**   ☒ New Hire   ☐ Change
☐ Rehire   ☐ Other _____

| | |
|---|---|
| **Associate Information** (New or Changed) SOC SEC NO. VERIFICATION: INITIALS _____ | Name __Tandi Mitchell__   Soc Sec No. _____<br>Street Address __P.O. Box 241161__<br>City, State, Zip __Montgomery  AL  36124-1161__<br>Telephone No. __334-567-5453__   ☐ Male ☒ Female  Date of Birth __10/3/61__<br>☒ Single ☐ Married  Withholding Allowances: _____ Additional Withholding Per Check _____<br>EEO race code: ☒ White ☐ Black ☐ Hispanic ☐ Asian/Pacific Islander ☐ Am. Indian/Alaskan Native |
| **New Hire/ Rehire** | Job Title __Sales Manager__   Department No. _____<br>Hire Date _____ or Return from Lay-off Date _____<br>Work Status: ☐ FT ☒ PT ☐ Temp ☐ Seasonal FT ☐ Seasonal PT<br>☐ Hourly: Rate of Pay (per hour) _____   ☐ Salary: Annual Salary _____<br>Insurance Eligibility Date _____ (hourly = 90 day wait / salaried = no wait) |
| **Changes**<br>☐ Review Increase<br>☐ Merit<br>☐ Promotion<br>☐ Adjustment<br>☐ Transfer<br>☐ Other | **FROM**                                       **TO**<br>Job Title _____                      Job Title _____<br>Dept Number _____                 Dept Number _____<br>Rate of Pay _____ Per _____   Rate of Pay _____ Per _____<br>Work Status: ☐ FT ☐ Seasonal FT        Work Status: ☐ FT ☐ Seasonal FT<br>☐ PT ☐ Seasonal PT                     ☐ PT ☐ Seasonal PT<br>Next Review Date _____ |
| **Absence** | ☐ Vacation Pay   No. of days requested _____ From: _____ To: _____<br>☐ Sick Pay        No. of days requested _____ From: _____ To: _____<br>☐ Other           No. of days requested _____ From: _____ To: _____<br>☐ Leave of absence (FMLA) From: _____ To: _____ Reason: _____ |
| **Remarks** | EXHIBIT 3 |

APPROVALS

Department Head/Date _____   General Manager/Date _____
Entered into payroll by _____   Date _____

CONFIDENTIAL

MV 00204

# FAIRFIELD INN by MARRIOTT
# MONTGOMERY, ALABAMA

**Job Title**: Director of Sales & Marketing  **Immediate Supervisor**: General Manager

**Summary**:
To sell facilities, services and staff of the hotel in accordance with the facilities business/marketing plan in order to meet or exceed budgeted sales department room night and revenue goals. Utilizes Hospitality Ventures principles and standards as a foundation for all the actions.

Essential Duties and Responsibilities include the following:
Other duties may be assigned.

Weekly telephone research professionally qualifying all local and regional outside sales calls. Specific appointments should be made where possible and information obtained prior to actual call. This also applies to potential cold calls (non-appointments and scheduled) Decision-makers name and actual travel needs should be obtained prior to actual call. Friday's or non-"direct selling" times are suggested for this duty.

Primary responsibility is monthly/annual corporate transient, corporate groups and S.M.E.R.F. groups.

Implementation of a minimum of 12 qualified outside sales calls weekly and 25 telemarketing calls weekly based on a 35-hour week schedule. Out of town solicitation is also to be made when requested. (3-5 day trips)

Develop and maintain an "active, potential and inactive file depicting all outside and inside sales calls activity in SALES PRO.

Upon request of client, book overnight accommodations for all group types. Communicate clearly all transactions made to appropriate departments heads and associates through the direction and approval of the general manager.

Correspond with potential customers providing any requested information concerning bids, proposals, confirmations of bookings, thank you letters, inquiries of the hotel, etc. In conjunction with the other office personnel, maintain accurate and up to date records of all sales departments functions and transitions.

Conduct hotels tours (site inspections) and entertain qualified clients in accordance with the company and property policies.

Participate with General Manager and Hospitality Ventures, Vice President of Sales and Marketing in developing overall business and marketing plan, advertising, pubic relations and/or sales promotional programs. Advise any marketing inefficiencies and opportunities.

Responsible to the General Manager and Vice President of Sales and Marketing regarding specific recommendations concerning individuals contacts or accounts.

Implement a marketing plan weekly/monthly "sales/media" action plans accordingly.

Submit required month/quarterly/annual reports to the General Manager and designated Hospitality Ventures personnel.

Supervise selected selling guidelines for all sales efforts.

Participate and attend Marriott Brand activities, Chamber of Commerce activities/meetings (via approved memberships), community events or organizations as it benefits the hotel.

Utilize the SALES PRO system to trace documents all sales & telemarketing transactions and daily/weekly planning.

Assist General Manager in the development or research for pricing and booking policies.

Generate contracts for all Group Blocks and or meeting that require a room block of more that 10 rooms.



EXHIBIT 4

Watts v. Hospitality
Int Discl/RFP 0001

_AW_ Adhere to time and attendance policy as established by Hospitality Ventures.

_AW_ Present a clean, pleasant professional image to project a positive polished appearance to potential guests and corporate clients.

_AW_ Contribute and work as a "team" member in all actions of Director of Sales and Marketing position.

_AW_ Perform other services and duties as requested by the General Manager. May be called on to host functions and participate in or conduct sales blitzes, travel and/or work extended hours to achieve departmental goals.

_AW_ All Sales & Marketing tools (forms & training materials), any information on corporate clients (information in SALES PRO) and usage of provided company laptop is the property of Fairfield Inn Montgomery and Hospitality Ventures. Disciplinary actions and/or termination of job will reflect if such items are taken from property without prior permission from General Manager. Agree that all items will be handed over as received if/when last day of employment notice is given.

QUALIFICATION REQUIMENTS:
To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

EDUCATION AND/OR EXPERINCE:
Fifth Year College or university program certificate, or two to four years related experience and/or training or equivalent combination of education and experience.

LANGUAGE SKILLS:
Ability to read, analyze and interpret general business periodicals, professional journals, technical procedures or governmental regulations. Ability to effectively present information and respond from groups of managers, clients, customers and the general public.

MATHEMATICAL SKILLS:
Ability to calculate figures and amounts such as discounts, interest, commissions, proportions percentages, area circumferences and volume. Ability to apply concept of basic algebra and geometry.

REASONING ABILITY:
Ability to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Ability to interpret a variety of instructions furnished in written, oral, diagram and scheduled form.

PHYSICAL DEMANDS:
The physical demands described are representative of those that must be met by an employee to successfully perform the essential functions of this job as Director of Sales of Marketing. Reasonable accommodations may be made enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is required to talk or hear. The employee frequently is required to sit. The employee is frequently required to stand and/or walk.

The employee must regularly lift and/or move up to 10 pounds. Specific vision abilities required by this job include close vision, distance vision, color vision, peripheral vision, depth perception and the ability to adjust focus.

WORK ENVIRONMENT:
The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

_As employed by Fairfield Inn Montgomery/Hospitality Ventures, I hereby accept this documentation of my duties as Director of Sales & Marketing._

| _[signature]_ 7/5/04 | |
|---|---|
| Employee Signature  Date | GM and/or VP of Marketing of Sales  Date |

Watts v. Hospitality
Int Discl/RFP 0002