# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHEAST DIVISION

| | | |
|---|---|---|
| **HEATHER WATTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:06-cv-1149-MEF** |
| **HOSPITALITY VENTURES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## PLAINTIFF'S RESPONSE
## IN OPPOSITION TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

---

COMES NOW the Plaintiff and, pursuant to the FRCP 56(b), files this response in opposition to Defendant's motion for summary judgment. Defendant has filed its motion for summary judgment alleging that it, Hospitality Ventures, LLC, never employed Heather Watts, the Plaintiff and specifically, that from January 1, 2003, to the present, Hospitality Ventures, LLC did not have any employees nor conduct any operations.

The Defendant has further alleged that it is not an employer pursuant to The Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and lastly, that the Plaintiff cannot prove a prima facie case of discrimination with regards to her gender and pregnancy claims pursuant to Title VII, 42 U.S.C. § 2000, *et seq*.

I.    **STATEMENT OF FACTS**

Heather Watts became employed with Hospitality Ventures, LLC, in June 2004, as the Director of Sales and Marketing.  (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 2).  Atlanta based Hospitality Ventures, LLC, is a privately held hotel ownership, management and development company which was founded in 2001 by Robert Cole.  (Doc. 18, Exs. 1, ¶ 2).  Further, the company owns and operates seven (7) hotels which operate under franchise agreements with Marriott or Hilton. The properties are located in Texas, New Jersey, Maine, **Alabama** and Tennessee. (Doc. 18, Ex. 1, ¶ 2; see also Ex. 2, ¶ 6).  Watts interviewed with and was hired by Roger A. Miller, Vice President of Sales and Marketing for Hospitality Ventures Management, Inc.  (HV).  Watts interviewed in the Atlanta offices of HV and at all times, reported to Roger A. Miller.  (Doc. 18, Ex. 3).  Miller not only directed Watts' work, but established her performance goals and raises.  (Doc. 32, Ex. 3 [Miller depo.], p. 6, lines 9-10, p. 28, line 21 - p. 29, line 2; Doc. 32, Ex. 1 [Watts depo.], p. 65, lines 2-7, p. 354, line 23 - p. 355, line 5).

Watts' performance was always deemed exemplary during her employment and in April 2005, Watts was provided a raise when she was solicited to work for another company.  (Doc. 32, Ex. 2 [DX22, DX23]).  As part of the raise, Watts sought to renegotiate her work hours, (Doc. 32, Ex. 2, [DX22]), but Miller

informed Watts that she would be required to work her current 35 hour work schedule as outlined in her job description but otherwise, her schedule was flexible. (Doc. 32, Ex. 2 [DX23]).

Watts continued her full time employment with HV until she took maternity leave on August 11, 2005, to deliver her baby on August 12, 2005.  (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶¶ 5, 7).  Watts continued working part-time during her pregnancy leave and at all times planned on coming back to work full time as evidenced by the fact that Watts had already secured daycare arrangements for when she returned to work on November 9, 2005.  (Doc. 32, Ex. 1 [Watts depo.], p. 169, line 14 - p. 170, line 6, p. 173, lines 14-18).  Watts was informed by her supervisor Roger Miller that her leave was approved for 8 to 12 weeks, but asked Watts to come back as quick as she could.  No one contested Watts' right to take FMLA/Maternity Leave continuing through November 9, 2005.  (Doc. 18, Ex. 10; Doc. 32, Ex. 1 [Watts depo.], p. 142, line 13 - p.146, line 20; Doc. 32, Ex. 2 [DX22, DX23]; Doc. 32, Ex. 3 [Miller depo.], p. 43, line 18 - p. 44, line 2).

When Watts tendered her leave, it was specifically for six to eight weeks, but Watts stated the duration depended on the delivery and health of her child but provided that she would not be out more than the allotted time of 12 weeks under the FMLA.  (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 5; Doc. 32, Ex. 2 [DX24,

3

DX25 and DX33]).  Roger Miller hired temporary contract labor, Tandi Mitchell, to fill in for Watts during her leave.  (Doc. 32, Ex. 3 [Miller depo.], p. 44, lines 3-7).

In October 2005, Tammy Dominguez, the new hotel general manager, began pressuring Watts to return to work three days a week at the hotel and do the rest of her work from home.  The intern, Tandi Mitchell, was still working in Watts' place.  Mitchell is a single person, not married nor does she have children.  (Doc. 32, Ex. 1 [Watts depo.], p. 183, lines 9-14).  Watts was working directly with Tandi approximately 2 days a week the entire time she was out on maternity leave.  (Doc. 32, Ex. 1, [Watts depo.], p. 111, lines 10-12).

Watts continued working part-time for Defendant from home while on leave until November 2, 2005, one week before she was to return from maternity leave.  (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 8).  On November 2, 2005, Watts was called by the new hotel Manager, Tammy Dominguez, and asked if she was returning to her job on a full-time basis.  Plaintiff responded, "Yes," and referenced her previous written agreement with Roger Miller wherein she was required to work  35-hours a week.  Dominguez replied that Watts would be required to work 40 hours a week, not 35.  Dominguez provided she was now the general manager and expected Watts to work from 8:00-6:00 p.m.  (Pl.'s Evid. Subm., Ex. 1 [Watts

4

Aff.], ¶ 9).

Watts informed Ms. Dominguez that she would need some time to find child care, as she had planned to return to her normal schedule of 35 hours, not 40. Ms. Dominguez told Watts that she would have until 5:00 p.m. that day to apprise her if Watts could secure child care after 6:00 p.m. (*Id.* at 9). Watts tried to explain to Dominguez her previous job agreement at the time she was hired required her to work 35 hours a week, but Dominguez cut Watts off and abruptly ended the telephone conversation. (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 10).

Watts also tried to explain to Ms. Dominguez that her position as Director of Sales and Marketing required her to work outside the hotel, not physically in the facility, since Dominguez was insisting that Watts would be in the hotel from 8:00-6:00 p.m. Ms. Dominguez called Watts again within 15 minutes of the previous telephone conversation and informed Watts that she and Roger Miller were not giving Watts the option of coming back to work, that Watts could either resign that day or be terminated. (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 11; Doc. 32, Ex. 2 [DX34, DX35]).

On November 3, 2005, Plaintiff was required to clean out her office, return her laptop and receive her final paycheck. (Doc. 32, Ex. 1 [Watts depo.], p. 316, line 14 - p. 317, line 9). On November 9, 2005, Dominguez called Watts and

stated that she (Dominguez) had made a mistake and could not terminate Plaintiff because she was still on FMLA leave.  Dominguez offered to rehire the Plaintiff to a receptionist position, but not her former position as Director of Sales and Marketing.  (Doc. 32, Ex. 1 [Watts depo.], p. 319, lines 15-22).

Dominguez stated Watts could work a 3:00-11:00 shift at the reception desk or do the night audit from the 11:00-7:00 shift.  (Doc. 32, Ex. 2 [DX36- Bates 162]).  Watts stated it was an insult with her degree in business to go from a director of sales and management to a front desk clerk.  (Doc. 32, Ex. 1 [Watts depo.], p. 22, lines 2-6, p. 193, lines 8-15).

Watts was replaced in her former position by a young woman, not married and at a higher salary.  (Doc. 32, Ex. 3 [Miller depo.], p. 81, line 2 - p. 82, line 16).  *Id.* at ¶ 11.  Indeed after her termination, Watts was subsequently replaced on two separate occasions by two different single females, unmarried and without children, Tandi Mitchell and Jennifer Middleton.  (See Pl. Evid. Subm., Exs. 2 and 3 [Personnel Action Forms of Jennifer Anne Middleton and Tandi Mitchell).

## II.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Legal Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

6

that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party

bears the initial burden of showing the Court, by reference to materials on file that

there are no genuine issues of material fact that should be decided at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Clark v.*

*Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).

A moving party discharges its burden on a motion for summary judgment by

"showing" or "pointing out" to the Court that there is an absence of evidence to

support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S. Ct. at

2553-54. Rule 56 permits the moving party to discharge its burden with or without

supporting affidavits and to move for summary judgment on the case as a whole or

on any claim. *Id.* When a moving party has discharged its burden, the non-moving

party must then "go beyond the pleadings," and by its own affidavits, or by

"depositions, answers to interrogatories, and admissions on file," designate specific

facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S. Ct. at 2553.

In determining whether the moving party has met its burden, the Court must

draw all reasonable inferences in favor of the non-moving party, and it may not

make credibility determinations or weigh evidence.[1] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. See Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299 (2d ed. 1995). That is, the court should give credence to the evidence favoring the non-movant, as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." *Id.* at 300.

## B.   Discrimination Analysis

The Pregnancy Discrimination Act of 1978 amended Title VII of the Civil

---

[1] The Eleventh Circuit has explained the reasonableness standard: In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one. *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).

Rights Act of 1964 by providing that the prohibition against employment-related

discrimination "because of sex" or "on the basis of sex" includes discrimination

based on pregnancy, childbirth or related medical conditions.  *See* 42 U.S.C. §

2000e(k).  The analysis applied to pregnancy discrimination claims is the same

analysis used in other Title VII sex discrimination cases.  *See Maddox v.*

*Grandview Care Center, Inc.*, 780 F.2d 987, 989 (11th Cir. 1986) (citing *Hayes v.*

*Shelby Memorial Hospital.,* 726 F.2d 1543, 1547 (11th Cir. 1984)).

There are two types of discrimination actionable under Title VII: disparate

treatment and disparate impact.  *See Spivey v. Beverly Enterprises, Inc.*, 196 F.3d

1309, 1312 (11th Cir. 1999).  Disparate treatment, simply put, is intentional

discrimination.  *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313 (11th

Cir. 1994).  Disparate impact claims, on the other hand, "involve employment

practices that are facially neutral...but that in fact fall more harshly on one group

than another and cannot be justified by business necessity."  *International Bhd. Of*

*Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52

L.Ed.2d 396 (1977).  This case is a disparate treatment claim.

A plaintiff alleging gender and/or pregnancy discrimination may attempt to

establish disparate treatment by producing either direct or circumstantial evidence.

*See Spivey*, 196 F.3d at 1312; *Armstrong*, 33 F.3d at 1313.  *See also Schoenfeld v.*

*Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999). Where a Plaintiff presents a prima facie case and provides evidence of the disbelief of Defendant's proffered reasons for the adverse employment action, Plaintiff is entitled to her day in court. This is true for the discrimination claims presented here, even though each requires proof of claim-specific facts. The demonstration of a prima facie case is not terribly burdensome, since Plaintiff must simply present facts "adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff's establishment of a prima facie case is in effect a presumption there was discrimination. The defendants, in order to rebut the presumption, must articulate legitimate, non-discriminatory reasons for the adverse employment actions. Thereafter, the presumption of discrimination drops from the case. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

The Eleventh Circuit interprets the decision in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), as holding that the fact finder's "...disbelief of the defendants' proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination." This occurs at trial. Plaintiff can survive summary judgment,

however, by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, non-discriminatory reasons. *Evans v. McLain of Georgia, Inc.*, 131 F. 3d 957 (11th Cir. 1997) (internal cites omitted).

**C.    Plaintiff Can Prove a Prima Facie Case of Gender and Pregnancy Discrimination Based on Defendant Treating Plaintiff Different in Terms of Employment**

Title VII's prohibition on employment practices that discriminate "because of [an] individual's sex," 42 U.S.C. § 2000e-2(a)(1), applies with all its force to employers who discriminate on the basis of pregnancy. See 42 U.S.C. § 2000e(k); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 89-90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983); *Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996).  A claim of discrimination on the basis of pregnancy "must be analyzed in the same manner as any other sex discrimination claim brought pursuant to Title VII.

To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse affect on her employment; and (4) that she suffered from differential application of work or

11

disciplinary rules.[2]  *See Armstrong*, 33 F.3d at 1314.

The Defendant does not dispute that Watts meets the second and third criteria of her prima facie case.  Rather, Defendant's argument is premised on its allegation that Watts was not a member of the protected class since she had delivered her baby eleven weeks earlier and had subsequently been released by her doctor six weeks later.  Defendant has, in its brief, cited to *Nance v. Buffalo's Café of Griffin*, 2005 U.S. Dist. LEXIS 20432, at *44-47 and *Sura v. Sterns Bank* , 2002 U.S. Dist. LEXIS 25376, at *14-16.  Plaintiff has been unable to locate or access these cases, presumably  unpublished, that support Defendant's contention that Plaintiff having delivered her baby, but while on maternity leave approved by Defendant,  would not have been a member of a protected class for purposes of The Pregnancy Discrimination Act.   However, it is without argument, based on Defendant's position, that Plaintiff requested to extend her maternity leave to 12 weeks and that Defendant granted that request.  (Doc. 34 [Def's Brief], p. 5, citing Doc. 32, Ex. 1 [Watts depo.], p. 294, line 15, p. 296, line 23, p. 367, lines 7-9; Doc. 32, Ex. 2 [DX33]).  The Defendant, by its own admission, considered Watts on maternity leave from the date she delivered her baby until her termination.  As such

---

[2]  *See also Lawrence v. Mars, Inc.*, 955 F.2d 902, 905-906 (4th Cir. 1992) that distinguishes the fourth element as "or supporting a reasonable inference of discrimination."

"maternity" leave could only apply to the protected class of a pregnant women. Males, nor nonpregnant females, would ever be granted "maternity" leave for the birth of a child and the subsequent recovery period. Plaintiff was unable to find any law of this Circuit or District which supports Defendant's position.

Further, Defendant argues that Plaintiff cannot prove that she was subjected to different terms of employment from any other employee. (Doc. 34 [Def.'s Brief], p. 12). However, Watts' terms of employment had been changed. Specifically, Watts signed an agreement in 2004 with the Defendant to work 35 hours a week. Watts had always worked those hours. (Pl.'s Evid. Subm., Ex. 4). Requiring Watts to work more hours and different hours than her counterparts is evidence of discrimination. Watts' position also required her to work outside in the field, meeting with customers and making sales calls, and Dominguez was now requiring Watts to work only in the hotel, making it impossible for Watts to successfully perform her job.

In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act (PDA), which provides that prohibitions of discrimination "because of sex" or "on the basis of sex" include discrimination on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k) (1994). This act declared that women affected by pregnancy "shall be treated the same for

all employment-related purposes, including receipt of benefits under fringe benefits programs, as other persons not so affected but similar in their ability or inability to work...." *Id. Spivey v. Beverly Enterprises, Inc*. 196 F.3d 1309, 1312 (11th Cir. 1999).

Requiring Watts to work different and longer hours and changing the material terms of her job was a violation of the Pregnancy Discrimination Act. The Defendant also argues Plaintiff's prima facie case fails because she cannot identify a comparator. In *Wilson v. B/E Aerospace, Inc,* 376 F.3d 1079 (11th Cir. 2004) the district court found that Wilson had failed to establish a prima facie case of discrimination in the termination of her employment because she failed to identify any male employee who was similarly situated and treated more favorably than she was treated. *Id.* at 1092. It was established that Wilson was a member of a protected class, was subjected to an adverse employment action when B/E terminated her, and was qualified for her job.

The Eleventh Circuit held that Wilson's failure to identify a comparator does not end the analysis of her termination claim. "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate <u>where no other evidence of discrimination is present</u>." *Holifield*, 115 F.3d at 1562 (citing *Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 182 (1st Cir. 1989) (emphasis

14

added)).  As other evidence of Defendant's discrimination exists, Plaintiff's failure to identify a comparator does not void Plaintiff's prima facie case.  Dominguez was requiring Watts to work different hours and terms than the agreed document that she had previously agreed to work.  (Pl.'s Evid. Subm., Ex. 4).

### D.    Defendant's Reason for Terminating Watts is Pretextual

Defendant asserts that Watts was terminated because she refused to work 40 hours and told Dominguez she would not work 40 hours a week.  (Doc. 34 [Def.'s Brief], p. 5).  This is untrue.  Watts never told Dominguez this nor refused to work 40 hours.  (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 13).  Rather, Dominguez told Plaintiff she did not have the option to return to work and again, later, Dominguez changes her story and tells the Department of Industrial Relations that Watts resigned because she could not find childcare.  (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶¶ 11, 18; Doc. 32, Ex. 2 [DX12]).

Plaintiff worked during her entire maternity leave volunteering to do any and everything that could be done while she was home after delivering her baby.  (Doc. 32, Ex. 2 [DX28]; Doc. 32, Ex. 3 [PX1 - Doc. 1000165]).  Plaintiff was paid 7 hours each week for her work.  This requirement to work during her leave was requested by Miller as well as Watts' own motivation to keep the sales up at the hotel.  (Doc. 32, Ex. 2 [DX28]).

15

Dishonesty can be "affirmative evidence of guilt." *See Reeves v. Sanderson,* 530 U.S. at 147, 120 S.Ct. 2097. Indeed, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.*

In *Reeves,* the Supreme Court explained that "it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." 530 U.S. at 147, 120 S.Ct. at 2108. A plaintiff may be able to establish that the employer's asserted justification is false and a pretext for discrimination based on some of the same evidence that established a prima facie case of discrimination. *Id.* A plaintiff need not "always introduce additional, independent evidence of discrimination." *Id.* at 148, 120 S.Ct. at 2109.

In *Wilson v. B/E Aerospace,* the Eleventh Circuit concluded that a Plaintiff's "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.*

Also, in *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189 (11th Cir. 2004), the court determines that defendant's "shifting" reasons for plaintiff's termination creates credibility issues for the defendant to be determined by the trier

of fact and that these credibility issues, created by the shifting reason for termination, can infer intentional discrimination.

Thus, the shifting reasons given by Dominguez will allow the plaintiff to show to a jury and this court that Hospitality Ventures explanation is unworthy of credence, and consequently to infer the real reason for termination was Watts' gender and pregnancy. At the very least, the shifting reasons establish a mixed motive for plaintiff's termination and her claims are due to proceed to a jury for determination.

In *Cleveland*, the court explained the rationale that discrediting the defendant's proffered reason for terminating the plaintiff, along with other evidence of discrimination, provided a sufficient basis for the jury's verdict. In *Cleveland* the defendant allegedly terminated the plaintiff for participating in an unauthorized infomercial. When pressed on the reason why infomercials were prohibited, the decisionmaker (Concello) shifted from a contract, to a non-compete agreement, to an unwritten policy, to a standard industry practice. These inconsistent reasons allowed the jury to question his credibility. (Emphasis added). Once [the decision maker's] credibility was damaged, the court reasoned, a rational jury could infer that he did not fire the Plaintiff because of the infomercial, but rather because of her disability. *Id.*

17

The same is true in the case *sub judice*. Dominguez's credibility is questionable.  It does not escape Plaintiff that the Defendant has not produced any testimony of Dominguez to support her reasons for Watts' termination. Dominguez's shifting reasons as testified to by the Plaintiff are unreliable and unworthy of credence.  A reasonable jury infer illegal discrimination.

E.     **Hospitality Ventures, LLC is Plaintiff's Employer and Subject to the Family and Medical Leave Act**[3]

The FMLA defines an employer as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer[.]"  *Quoting* FMLA, 29 U.S.C. § 2611(4)(A)(ii)(I);  See also *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002).  Throughout her employment, Watts was supervised by Roger Miller and the two communicated via email regarding every aspect of Watts' position.  (Doc. 32, Ex. 2, [DX22, DX23]).  Further, the CEO of Hospitality Ventures, Robert Cole, was copied on many of these same e-mails. Cole was complimentary of Watts and her performance and often emailed Watts about her job performance such as, "you are generating a lot of momentum on the revenue side...keep it going!!"  (Doc. 32, Ex. 4).

In the capacity of Director of Sales and Marketing, Watts was provided a job

---

[3]  Plaintiff has previously filed two responses to the Defendant's Partial Motion for Summary on this same issue.  (See Doc. ___ and

description by Hospitality Ventures. The job description provided a summary of Plaintiff's job duties depicting she was to, "sell facility services as staff of the hotel in accordance with the facility's business/marketing plan in order to meet or exceed budgeted sales department room, night and revenue goals. Utilizes **Hospitality Ventures'** principles and standards as a foundation for all the actions." (Pl.'s Evid. Subm., Ex. 4). Plaintiff signed, acknowledging the job duties , "As employed by Fairfield Inn Montgomery/**Hospitality Ventures**, I hereby accept this documentation of my duties as Director of Sales and Marketing." *Id.*

As part of her duties, Watts was often provided the sales figures and occupancy numbers of the other Hospitality Ventures, LLC hotels. (Doc. 32, Ex. 6). Watts was further provided the quarterly incentive compensation plan from Hospitality Ventures. (Doc. 32, Ex. 1, [Watts depo.], p. 68, lines 4-16).

The Defendant's own documents depict there is absolutely no truth in its assertion to this Court that it does not have employees, nor that it has not conducted any operations since January 1, 2003. Hospitality Ventures not only set the salary and compensation plan for Watts, it also established the job duties and directed Watts' day to day work. (Doc. 32, Ex. 1, [Watts depo.], p. 71, line 13 - p. 72, line 11). Summary judgment is due to be denied.

### F.    Plaintiff Can Establish She was Terminated and Not Rehired

### Because of her FMLA Sanctioned Leave

The FMLA contains two distinct types of provisions. First, it creates a series of substantive rights that eligible employees "shall be entitled" to up to twelve weeks of unpaid leave per year for any one of the following purposes: when the employee has "a serious health condition that makes [him or her] unable to perform the functions of [his or her] position," 29 U.S.C. § 2612(a)(1)(D); to care for a close family member with such a condition, 29 U.S.C. § 2612(a)(1)(C); or because of the birth, adoption, or placement in foster care of a child, 29 U.S.C. § 2612(a)(1)(A) & (B). See also 29 U.S.C. § 2611(11); 29 C.F.R. §§ 825.100(a), 825.114 (1997) (defining a "serious health condition").

Following a qualified absence, the employee is entitled to return to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority. 29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.100(c) (1997). The FMLA also provides for "intermittent" leave, which allows an employee to take such leave intermittently "when medically necessary," such as to attend appointments with a health care provider for necessary treatment of a serious health condition. 29 U.S.C. § 2612(b); 29 C.F.R. § 825.117 (1997) (defining requirements for intermittent leave). *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (C.A.1 (R.I.) 1998).

Watts was entitled to take FMLA leave for her own health condition and for the birth of her child.  Watts requested leave and was subsequently granted the time off from work.  However, Defendant failed to apprise Watts of her rights under the FMLA and Watts was pressured to return to her employment early.  Prior to Watts returning to work full-time and while working a reduced schedule, Watts was terminated within one week of returning from her approved leave, but after Watts had completed an extensive sales plan for the defendant.  (Doc. 32, Ex. 1, [Watts depo.], p. 360, lines 6-15).  Only after Watts filed her charge of discrimination on the basis of her gender and for violations of FMLA, did the Defendant assert that it was not Watts' real employer or that Watts was not entitled to FMLA leave.

Prior to Watts filing a charge, Defendant had never asserted that Watts was not entitled to FMLA leave, but had readily afforded Watts the leave until its manager, Dominguez, terminated Watts while on leave.  The Defendant faced with an obvious violation of the FMLA, sought the only avenue available; it was not Watts' employer.

Watts was qualified for her previous position which was open, having only a contract temporary employee that she had located and placed in her position during her FMLA leave.  Defendant, thereafter, refused to allow Watts to return to this

21

available position and instead terminated her employment while Watts was on leave. There is no dispute that Watts was terminated while on leave by Tammy Dominguez, the general manager. Pursuant to the FMLA, Watts was entitled to return to the same position and working conditions. 29 U.S.C. § 2614(a)(1).

Defendant has violated the FMLA because it terminated Watts and did not allow her to return to her previous position or an alternate position. To make out a prima facie case of retaliation under the FMLA, Watts must show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir.1997).

Defendant does not contend that Watts cannot meet her prima facie elements of retaliation under FMLA. It did not dispute that Watts availed herself of rights protected under the FMLA, or that she was terminated. It is further undisputed that Dominguez called Watts while she was on her leave attempting to change her terms of employment and the conditions of her leave. (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 9).

The Defendant's only argument, that Watts refused to return to a 40-hour work week is an untruth. (Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 13; Doc. 32, Ex.

22

1 [Watts depo.], p. 102, lines 1-19). At no time did Watts refuse to return to work or refuse to work 40 hours a week. (Doc. 32, Ex. 1 [Watts depo.], p. 102, lines 13-21; Pl.'s Evid. Subm., Ex. 1 [Watts Aff.], ¶ 13). Rather, when her hours were increased while Watts was, again, still on leave, she asked only that she be allowed time to work out child care arrangements. Within 15 minutes, Dominguez changed her mind again and terminated Watts.

A reasonable jury could find that Defendant's reasons for terminating Plaintiff's failure to work 40 hours, is a pretext for discrimination in light of the evidence that Plaintiff was terminated while on Family and Medical Leave and never refused to work 40 hours.

Watts has met her burden on summary judgment refuting Defendant's argument. Defendant failed to carry its burden on summary judgment. Watts was terminated in violation of the FMLA and was not returned to the same position nor an alternate position with equivalent pay, benefits, and working conditions. Summary judgment is due to be denied.


G.     **Defendant is Estopped from Alleging that Plaintiff is not Entitled to FMLA Leave**

Defendant has admitted in its position statement to the EEOC that it, while

not required to do so, it allowed Watts to take a leave of absence to give birth. (Doc. 32, Ex. 9, ¶¶ 3, 5). The Defendant specifically stated in its EEOC position statement that "[O]n August 11, 2005, Ms. Watts began a maternity leave and gave birth the following day. On September 27, 2005, Ms. Watts asked to extend her maternity leave until the first week of November. The company permitted her to extend her maternity leave as requested." (Doc. 32, Ex. 9, p. 2, ¶ 2; see also Doc. 32, Ex. 10). Therefore there is no quarrel from Defendant that Watts requested a leave of absence pursuant to FMLA, was granted that leave, and then terminated while on leave for the birth of her child. (Doc. 32, Ex. 10).

An employer who remains silent when its employee announces that she plans to take medical leave is effectively misleading that employee into believing that she is protected by the FMLA. *Kosakow v. New Rochelle Radiology Assoc.,* 274 F.3d 706 (2nd Cir. 2001). In *Kosakow*, the court held that "a party may be estopped where that party makes a definite misrepresentation (or in the present case, a misrepresentation by silence) and had reason to believe the other party would rely upon it, regardless of whether the person making the representation intended to deceive." *Id.* at 726.[4]

---

[4] While other Circuits have applied the doctrine in such a context, the Eleventh Circuit has not. See *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 797 n. 4 (11th Cir. 2000), cert. denied, 532 U.S. 1037, 121 S.Ct. 1998,

In *Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352, (5th Cir. 2006), this same issue was addressed by the Fifth Circuit:  Minard requested leave for surgery, was granted leave, but on the day she was scheduled to return to work, ITC terminated her employment rather than restoring her to her former or equivalent position as required by the FMLA.  After Minard had taken leave an undergone surgery, ITC discovered that Minard was not an "eligible employee" under the FMLA at the time she had requested leave in that ITC employed less than fifty (50) employees at or within 75 miles of the work site of which Minard was employed.  *Id.* at 354.

Minard filed suit alleging that ITC was ethically estopped to deny that she was an eligible employee under FMLA when she requested leave because she had relied to her detriment on ITC's representation that she was, at the time, an eligible employee under the Act and, therefore, entitled to reinstatement upon returning

---

149 L.Ed.2d 1001 (2001) (declining to speculate what the result of the case might have been if there had been facts to support a detrimental reliance argument).  See *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002) (finding the district court did not abuse its discretion in applying equitable estoppel where the employee relied on written correspondence from employer); *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 727 (2d Cir. 2001) (finding that on remand the district court could conclude that equitable estoppel applies). *Woodford v. Cmty. Action Of Greene County, Inc.*, 268 F.3d 51 (2d Cir. 2001) discusses, in dicta, the potential availability of equitable estoppel. See also *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000) (same), citing, *Pennant v. Convergys Corp.*, 368 F.Supp.2d 1307, 1313 (S.D. Fla. 2005).

from her medical leave. *Id.* The Fifth Circuit denied summary judgment to ITC relying on the recent Supreme Court decision in *Arbaugh v. Y & H Corporation, d/b/a Moonlight Café,* 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) and on the doctrine of equitable estoppel.

The Court ruled that in light of the Supreme Court's decision in *Arbaugh*, the term "eligible employee" is a substantive ingredient of a Plaintiff's claim for relief, not a jurisdictional limitation. The Court ruled that the fifty (50) employee threshold appears in the definition section of the Act separate from the jurisdictional section and does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts. *Id.* at 356. The Fifth Circuit concluded that applying the Supreme Court's *Arbaugh* bright line rule, the threshold number of employees for application of FMLA is an element of a Plaintiff claim for relief, not a jurisdictional limitation. *Id.* at 357.

The Fifth Circuit also addressed Minard's equitable estoppel issue, rejecting the Defendant's assumption that the doctrine of equitable estoppel does not apply. *Id.* at 358. The Court cited that because it had subject matter jurisdiction, it would address the equitable estoppel question and concluded that ITC should be equitably estopped to assert a "non eligible employee" coverage defense. *Id.*

The Fifth Circuit stated, "The Supreme Court has recognized that, under

26

federal law, [e]stoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In *Heckler* the Court quoted and adopted the elements of estoppel set forth in §894(1) of The Restatement (Second) of Torts as follows: "If one person makes a definite representation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act...the first person is not entitled...(b) to regain property or its value that the other acquired by the Act (if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position it would be unjust to deprive him of that which he thus acquired." *Id.* at 358, citing Restatement (Second) of Torts, §894(1) (1979); citing also Restatement (Second) of Agency, §8B (1958). "Accordingly, an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is a "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of noncoverage, if the employee reasonably relies on that representation and takes action thereon to her detriment. *Id.* at 359. (internal citations and footnotes omitted).

Defendant has alleged that it never employed the Plaintiff, Heather Watts.

27

Specifically, Roger Miller, submitted his affidavit that he was employed by

Hospitality Ventures Management and that Montgomery Ventures, LLC owns and

operates the hotel where Watts worked, not Hospitality Ventures.  (Doc. 13, Ex. 1,

¶¶ 1-3; Doc. 32, Ex. 3 [Miller depo.], p. 71, line 14 - p. 75, line 20).

While Miller testified that Hospitality Ventures did not own nor operate the

Montgomery Fairfield Inn, documents produced during Miller's deposition fully

contradict his affidavit.  For instance, the executive summary by Marriott  depicts

that Hospitality Ventures, LLC, not only managed, but owned, the Montgomery

Fairfield Inn facility.  (Doc. 32, Ex. 3 [Miller depo. - PX9, PX10, and PX11]).

Miller could not explain the obvious  discrepancy between the documents and his

affidavit.  (Doc. 32, Ex. 3 [Miller depo.], p. 74, line 8 - p. 75, line 20).  Miller

acknowledged that the situation with Watts had become "a sticky mess."  (Doc. 32,

Ex. 3 [Miller depo. - PX12]).  Miller had never received any training from human

resources and only learned after the termination of Plaintiff that it was illegal to

discriminate against pregnant women or a worker on FMLA leave.  (Doc. 32, Ex. 3

[Miller depo.], p. 69, line 15 - p. 70, line 7).

Miller also agreed that during the twelve weeks that Watts was off work she

was not to be paid, with the exception of seven hours a week she worked

developing the 2006 sales and marketing plan for Defendant.  Watts submitted the

28

sales and marketing plan on October 31, 2005, having worked on the project for months. Watts was fired two days later. (Doc. 32, Ex. 1 [Watts depo.], p. 360, lines 6-15; Doc. 32, Ex. 3 [Miller depo.], p. 48, line 1 - p. 49, line 4).

The Defendant should be estopped from now claiming that Watts was not entitled to FMLA benefits after is sat silent, benefitting from Watts' continued work that it insisted she complete during her maternity leave. The Defendant sits in a comfortable position requiring work while the young mother could have enjoyed this special time, but then terminating her after delivery of the project she developed for its entire sales plan for 2006. Summary Judgment is due to be denied.

### H.    Plaintiff's State Law Contract Claim

Plaintiff moves to voluntarily move to dismiss her claim of Breach of Contract of Good Faith and Fair Dealing.

## III.    CONCLUSION

This court shall only grant summary judgment under Rule 56 where the record evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). The court's role is limited to deciding whether there is sufficient evidence upon which a reasonable

jury could find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In this matter, summary judgment is not proper because a reasonable jury could conclude that Hospitality Ventures was the real employer of Watts and that Watts was an eligible employee under the Family Medical Leave Act.  Certainly, a jury could find that the Plaintiff was hired by Hospitality Ventures, was supervised and directed in her employment by Hospitality Ventures and was subsequently terminated while on leave to give birth to her child. Watts has proven her prima facie case of discrimination under the FMLA and Title VII.  Further, Watts has proven that Defendant's articulated reasons for terminating her were false and lacked any credence.  Watts has established that she was the victim of unlawful discrimination.

Respectfully submitted,


/s/Alicia K. Haynes
Alicia K. Haynes
Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Daniel S. Fellner
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326

Jeffrey Allen Lee
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203-2618

R. Jason D'cruz
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326

/s/ Alicia K. Haynes
OF COUNSEL

31